# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH D. HEWITT, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 08-CV-227-TCK-TLW |
| DAVID PARKER, Warden, | ) ) ) |
| Respondent. | ) ) |

## OPINION AND ORDER

Before the Court is Petitioner's 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1). Petitioner is a state prisoner and appears *pro se*. Respondent filed a response (Dkt. # 17) to the petition, and provided the state court record (Dkt. #s 17, 18, 19). Petitioner filed a reply (Dkt. # 20). Upon careful review of the record filed in this matter, the Court finds that Petitioner is entitled to an evidentiary hearing on the issue of ineffective assistance of counsel.

## *BACKGROUND*

Petitioner Kenneth D. Hewitt was convicted by a jury in Rogers County District Court, Case No. CF-2004-574, of Lewd Acts With a Child, After Former Conviction of Two or More Felonies. He was sentenced in accordance with the jury's recommendation to 125 years imprisonment. At trial, the eleven-year old victim, S.M., testified that on September 17, 2004, between 7 and 8 p.m., he went outside the apartment where he lived with his father in Catoosa, Oklahoma, to empty his cat's litter box. As he completed the task, he was approached by a man who asked him, "Do you like the stars?" While the man continued to ask questions, S.M. saw the man put his hand in his pants and "play with himself." The man asked S.M. if he "like to jaculate [sic]," and then said "I like to jaculate [sic]." As S.M. turned to leave, the man grabbed S.M.'s pants and said, "Please don't

tell anybody." S.M. returned to his apartment where he told his father what had happened. His father called the police. One of the officers who responded to the call testified that Petitioner was found in a grassy area near the apartment complex. His physical description, including the description of the clothes he was wearing and the items he carried, including a ball cap, and a dark coat and QuikTrip mug, matched the description given by S.M.

On January 26, 2005, Petitioner entered a Waiver of Jury and Nonjury Trial. A change of plea hearing was set for March 7, 2005.[1] However, on February 25, 2005, Petitioner moved to set aside the waiver of jury trial, because he "did not understand the recommendation and believed it to be something different." The motion was granted.

On September 14-15, 2005, Petitioner was tried by a jury. Prior to jury selection, defense counsel advised the trial court judge that Petitioner waived his statutory right to a bifurcated trial and that he anticipated that Petitioner would testify in his own defense. Petitioner acknowledged to the trial judge that the State had made a plea offer of 15 years in custody of the Oklahoma Department of Corrections, that trial counsel advised him that he faced 20 years to life if convicted by the jury, but that it was his decision to reject the plea offer and to waive a bifurcated trial. During trial, the State presented the testimony of three witness: S.M., the victim; Christopher Don Hopkins, the victim's father; and Douglas Spencer, the police officer who arrested Petitioner. At the end of the day on September 14, 2005, the State rested and the trial judge overruled defense counsel's demurrer. The jury was excused for the evening recess. On the morning of September 15, 2005, certified copies of Petitioner's prior judgments and sentences, along with 3 photographs of the

---

[1]Evidence in the record suggests that the prosecution initially offered six years imprisonment in exchange for a plea of guilty. See Dkt. # 20, "Ex. 45," containing part of a letter signed by defense counsel, Timothy Wantland. The offer was withdrawn the day a jury trial was set. Id.

2

apartment complex, were entered by stipulation. The defense then rested without offering the testimony of Petitioner or any other witness. After hearing the attorneys' closing arguments, including the prosecutor's request that the jury find Petitioner guilty and recommend a sentence of 250 years, the jury returned a verdict of guilty as charged and recommended a sentence of 125 years imprisonment.

On October 6, 2005, the trial court judge sentenced Petitioner to 125 years imprisonment in accordance with the jury's recommendation. Surprisingly, defense counsel failed to object to the recommended sentence when afforded the opportunity prior to entry of the sentence.[2] Petitioner was represented during trial and sentencing by attorney Timothy D. Wantland.

---

[2]Petitioner was found guilty of Lewd Acts with a Child, After Former Conviction of Two or More Felonies, and was sentenced to 125 years imprisonment. Oklahoma's 85% Rule applies to this crime. Although the Court recognizes the seriousness of sex offenses involving children, the conduct involved in this case was not particularly egregious. Other than grabbing S.M.'s pants leg as he turned to leave, nothing in the record suggests that Petitioner had physical contact with S.M. Nothing in the record suggests that Petitioner exposed himself to S.M. In fact, at the preliminary hearing, S.M. testified that he did not see the man's "private parts." See Dkt. # 19-5, Prelim. Hr'g Trans. at 21. S.M. testified that he saw the man put his hands in his pants. See Dkt. # 19-1, Tr. Trans. at 151-52. Nothing in the record suggests that the conduct described by S.M. warranted a 125 year sentence. In addition, Petitioner was sentenced as a recidivist. His prior convictions were for Assault and Battery on a Police Officer (Tulsa County District Court, Case Nos. CF-1992-59 and CF-2000-7094), Assault and Battery With a Dangerous Weapon (Tulsa County District Court, Case No. CF-1992-59), and Indecent Exposure (Wagoner County District Court, Case No. CF-2001-154). Prospective jurors were informed of the fact of the prior convictions during voir dire. Certified copies of the judgments and sentences were admitted by stipulation. However, the jury was never provided any information concerning the incidents giving rise to the prior convictions. For example, Petitioner claims that the Indecent Exposure conviction was for urinating in the parking lot of a convenience store. See Dkt. # 20 at 5. Furthermore, in both of the Tulsa County cases, Petitioner was also charged with Public Drunk. See www.oscn.com. While acknowledging the state's interest in deterring recidivism and protecting the public from violent sex offenders, the Court is of the opinion that under the facts of this case, a much lower sentence would have accomplished those goals.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals ("OCCA"). Represented by attorney Thomas D. McCormick,[3] he raised two (2) propositions of error:

1. Improper closing argument was allowed.

2. The Defendant was denied effective assistance of counsel.

See Dkt. # 17, Ex. 1. In an unpublished summary opinion filed July 7, 2006, in Case No. F-2005-1019 (Dkt. # 17, Ex. 3), the OCCA rejected both claims and affirmed the Judgment and Sentence of the trial court.

On October 17, 2007, Petitioner filed his application for post-conviction relief (Dkt. # 13, Ex. 4) in the state district court.[4] By order filed December 13, 2007 (Dkt. # 13, Ex. 5), the state district court denied relief on Petitioner's claims that he was improperly denied free transcripts, he was denied the right to testify on his own behalf, the trial court committed error by failing to conduct a bifurcated trial, the trial court erred in failing to properly instruct the jury regarding the significance of the 85% Rule, prosecutorial misconduct, he was denied his right to an impartial jury, the trial court erred by allowing a prosecution witness who was not on the witness list, he was denied allocution, and he was denied effective assistance of trial and appellate counsel. Petitioner appealed to the OCCA. By Order filed February 28, 2008 (Dkt. # 17, Ex. 6), the OCCA affirmed the denial of post-conviction relief.

---

[3]The record before the Court includes correspondence provided by Petitioner indicating that Mr. McCormick is deceased. See Dkt. # 42, "Ex. 57."

[4]On July 10, 2007, Petitioner filed an "application for evidentiary hearing under post-conviction procedures Title 22 O.S. 1084." See Dkt. # 4, Ex. 21. Petitioner's application for post-conviction relief was attached to the application for an evidentiary hearing. Id.

On March 4, 2008, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1) and supporting brief (Dkt. # 4) in the United States District Court for the Western District of Oklahoma. By Order filed April 21, 2008, the case was transferred to this judicial district. In his supporting brief, Petitioner identifies six (6) grounds for relief, as follows:

> Ground 1: The trial court denied Petitioner due process of law by failing to conduct a bifurcated proceeding.
>
> Ground 2: Defense counsel and trial court denied Petitioner due process of law by refusing to allow Petitioner to testify, to present witnesses for the defense, or to speak at sentencing.
>
> Ground 3: Petitioner was denied the right to trial by an impartial jury.
>
> Ground 4: Petitioner was denied the effective assistance of counsel at trial and on appeal.
>
> Ground 5: Petitioner's sentence is improper and is a violation of the Eighth Amendment.
>
> Ground 6: Petitioner was denied due process and equal protection of the law when both trial court and appointed appellate counsel refused to allow Petitioner to view his transcripts.

See Dkt. # 4. In response to the petition, Respondent states that the petition is timely but asserts that Petitioner's claims are not cognizable in these proceedings, or do not justify relief under 28 U.S.C. § 2254(d), or are procedurally barred. See Dkt. # 17.

*ANALYSIS*

**A.    Exhaustion**

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Exhaustion of a federal claim may be accomplished by showing either (a) that the state's appellate court has had an opportunity to rule on the same claim presented in federal

court, or (b) that there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b); see also White v. Meachum, 838 F.2d 1137, 1138 (10th Cir. 1988). The exhaustion doctrine is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994) (quoting Rose, 455 U.S. at 518); see also Stewart v. Martinez-Villareal, 523 U.S. 637, 644 (1998). "In order to exhaust his state remedies, a federal habeas petitioner must have first fairly presented the substance of his federal habeas claim to state courts." Hawkins v. Mullin, 291 F.3d 658, 668 (10th Cir. 2002) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)).

Petitioner's excessive sentence claim is unexhausted because it has never been fairly presented to the OCCA as a separate claim. However, in response to the petition, Respondent states that the claim would be procedurally barred if Petitioner were to return to state court to exhaust the claim. See Dkt. # 17. The Court agrees with Respondent that, in light of the procedural posture of this case, it would be futile to require Petitioner to return to state court because his unexhausted claim would undoubtedly be subject to a procedural bar independent and adequate to prevent habeas corpus review. Therefore, there is no available state corrective process, and consideration of the petition is not precluded by the exhaustion requirement of § 2254(b). Nonetheless, the excessive sentence claim is procedurally barred. Anderson v. Sirmons, 476 F.3d 1131, 1139-40 n.7 (10th Cir. 2007) (describing application of "anticipatory procedural bar" to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it). Petitioner's remaining claims were fairly presented to the OCCA on either direct or post-conviction appeal. Therefore, the exhaustion requirement is satisfied in this case.

**B. Evidentiary hearing on claim of ineffective assistance of counsel**

In Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998), the Tenth Circuit discussed the grant or denial of a request for an evidentiary hearing in a habeas proceeding under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). After Miller, the Supreme Court decided Williams v. Taylor, 529 U.S. 420 (2000). In Williams, the Supreme Court cited Miller with approval and set forth the analysis to be applied in determining whether to grant an evidentiary hearing.

The first step in deciding whether an evidentiary hearing is warranted is to determine whether Petitioner failed "to develop the factual basis" of his claims in state court. Williams, 529 U.S. at 430, 435; Miller, 161 F.3d at 1253; 28 U.S.C. § 2254(e)(2). According to Miller, if "a habeas petitioner has diligently sought to develop the factual basis underlying his habeas petition, but a state court has prevented him from doing so, § 2254(e)(2) does not apply." Miller, 161 F.3d at 1253. In other words, if a petitioner diligently sought an evidentiary hearing in state court and his request was denied, the petitioner can not be deemed to have "failed to develop the factual basis" of the claims. Id.

In this case, Petitioner requested an evidentiary hearing on issues raised in his application for post-conviction relief. See Dkt. # 4, Ex. 21. The state district court denied both the request for an evidentiary hearing and the application for post-conviction relief. The OCCA affirmed the district court's ruling. Thus, Petitioner has not "failed to develop the factual basis" of his ineffective assistance of counsel claim set forth in his habeas petition. Williams, 529 U.S. at 435-36; Miller, 161 F. 3d at 1253; Mayes v. Gibson, 210 F.3d 1284, 1288 n.2 (10th Cir. 2000).

Since Petitioner did not fail to develop the factual basis of the claim in state court, Petitioner's request for an evidentiary hearing is governed by pre-AEDPA standards. Miller, 161 F. 3d at 1253. Under pre-AEDPA standards, a petitioner "is entitled to receive an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." Id. (citing Medina v. Barnes, 71 F. 3d 363, 366 (10th Cir. 1995)).

In his petition, Petitioner alleges, as he did in his state post-conviction proceeding, that his trial counsel provided ineffective assistance in refusing to allow him to testify. While this claim was not raised on direct appeal, Petitioner raised in his post-conviction proceeding a separate claim of ineffective assistance of appellate counsel for failure to raise this claim, as well as numerous other instances of ineffective assistance of trial counsel, on direct appeal. In resolving Petitioner's claim of ineffective assistance of appellate counsel in his post-conviction appeal, the OCCA cited Cartwright v. State, 708 P.2d 592 (Okla. Crim. App. 1985), and found that "[f]ailure to raise each and every issue is not determinative of ineffective assistance of counsel and counsel is not required to advance every cause of argument regardless of merit." See Dkt. # 11, Ex. 5. That premise deviates from the controlling federal standard. Cargle v. Mullin, 317 F.3d 1196, 1202-05 (10th Cir. 2003) (explaining that (1) the merit of the omitted claim is the focus of the appellate ineffectiveness inquiry, (2) omission of a sufficiently meritorious claim can, in itself, establish ineffective assistance, and, thus, (3) the state court's rejection of an appellate ineffectiveness claim on the basis of the legal premise invoked here is wrong as a matter of federal constitutional law); see also Malicoat v. Mullin, 426 F.3d 1241, 1248 (10th Cir. 2005) (following Cargle). Because the OCCA's analysis of Petitioner's ineffectiveness allegations deviated from the controlling federal standard, it is not entitled to deference on habeas review. Cargle, 317 F.3d at 1205; Malicoat, 426 F.3d at

1248. Therefore, the Court will analyze Petitioner's claim of ineffective assistance of appellate counsel for failing to raise claims of ineffective assistance of trial counsel *de novo*.

In evaluating a claim of ineffective assistance of appellate counsel, this Court applies the <u>Strickland</u> two-pronged standard used for general claims of ineffective assistance of trial counsel. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>see</u> <u>also</u> <u>United States v. Cook</u>, 45 F.3d 388, 392 (10th Cir. 1995). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. <u>Hawkins v. Hannigan</u>, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. <u>Id.</u>; <u>see</u> <u>also</u> <u>Parker v. Champion</u>, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing <u>Cook</u>, 45 F.3d at 392-93).

Petitioner complains that his appellate counsel refused to raise the claims identified in the habeas petition on direct appeal. <u>See</u> Dkt. # 4 at 19. Included in those claims is Petitioner's claim that trial counsel provided ineffective assistance in refusing to allow him to testify. As trial commenced, it is clear that defense counsel anticipated that Petitioner would testify. <u>See</u> Dkt. # 19-1 at 4. In addition, trial counsel had named Petitioner's wife, Marianne Hewitt, as an additional witness for the defense. <u>See</u> Dkt. # 19-3, O.R. at 41. However, after the State rested, defense counsel stated that the defense rested without calling any witnesses. <u>See</u> Dkt. # 19-1, at 231. Petitioner avers that he informed appellate counsel of the facts surrounding this claim by letter and that his wife spoke to appellate counsel by phone. In her affidavit, Petitioner's wife states that "[d]uring Kenneth's appeal, his lawyer was told of all the discrepancies in the case and that neither Kenneth [n]or I were granted the chance to testify." <u>See</u> Dkt. # 4-2. The record also contains a letter written

9

by Petitioner to appellate counsel. See Dkt. # 4-10. The copy attached as Exhibit 10 to Petitioner's application for post-conviction relief is dated July 25, 2006. See Dkt. # 4-22. Thus, the letter was written well after the brief in chief had been filed and, in fact, after issuance of the July 7, 2006, summary opinion by the OCCA affirming the Judgment and Sentence of the trial court. As a result, appellate counsel would not have been allowed to supplement the record with information contained in the letter. See Rule 3.11(B)(4), *Rules of the Oklahoma Court of Criminal Appeals*. However, even if appellate counsel had no knowledge of the facts now asserted by Petitioner, it is clear from the trial record that trial counsel anticipated that Petitioner would testify and, for no reason apparent from the record, rested without calling witnesses for the defense.

In Cannon v. Mullin, 383 F.3d 1152 (10th Cir. 2004), the Tenth Circuit Court of Appeals addressed a habeas petitioner's claim that his trial attorney had not allowed him to testify. The Tenth Circuit summarized the relevant law as follows:

> A criminal defendant has a constitutional right to testify in his own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The decision whether to testify lies squarely with the defendant; it is not counsel's decision. Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Defense counsel should inform the defendant that he has the right to testify and that the decision whether to testify belongs solely to him. See Teague, 953 F.2d at 1533-34. Counsel should also discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant. See id. Yet counsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy. See United States v. Janoe, 720 F.2d 1156, 1161 & n. 10 (10th Cir.1983).

Cannon, 383 F.3d at 1171-72. In support of his claim, Petitioner provides his own affidavit, along with affidavits of his wife, mother, father, and Regina Burke. See Dkt. # 4, Exs. 1, 2, 3, 4, and 5; Dkt. # 20, Exs. 1, 2, 3, 4, and 5. Information contained in those affidavits suggests that after the state rested, Petitioner anticipated testifying in his own defense and that defense counsel did not

discuss a change in strategy with Petitioner prior to announcing that the defense would not be calling any witnesses. Significantly, neither defense counsel nor the trial court made a record regarding the decision not to call Petitioner as a witness. As a result, nothing in the state court trial record refutes Petitioner's contention that he was not consulted prior to Mr. Wantland's announcement that the defense rested.[5]

The affidavits provided by Petitioner also describe a troubling incident not recorded by the court reporter involving the trial judge, the prosecutor, and defense counsel. Petitioner's wife, his parents, and Regina Burke all aver that on the morning of September 15, 2005, Petitioner's trial was scheduled to resume at 9:00 a.m. At about 9:30 a.m., the prosecutor and defense counsel entered the courtroom together, through a back door, followed by the trial judge who apologized for the delay and announced off the record that the 30 minute delay "saved the jury 4 hours." See Dkt. #s 4 and 20, Exs. 2, 3, 4, and 5. After making the off-record comment, the trial judge then stated "on the record" and trial proceedings resumed. Id., Exs. 2 and 3. Both Petitioner's father and Regina Burke also state that once Mr. Wantland arrived, Petitioner told Mr. Wantland that he was ready to testify. But Mr. Wantland said, "no" and assured Petitioner he would "walk out a free man." Id., Exs. 4 and 5.

If the information contained in the affidavits provided by Petitioner is true, then counsel deprived him of the constitutional right to testify in his own defense. Such a dereliction of duty by

---

[5]In support of his reply (Dkt. # 20), Petitioner provides correspondence he received from the Oklahoma Bar Association ("OBA"), dated June 1, 2006, addressing his grievance against Mr. Wantland. See Dkt. # 20, "Ex. 45." The correspondence includes a responsive letter from Mr. Wantland to the OBA. Petitioner provides pages 1 and 4 of Mr. Wantland's letter. Id. at 2-3. On page 4, Mr. Wantland wrote that "[i]t was Mr. Hewitt's choice not to testify. I had been to the jail to prepare him on what to expect on the stand. He decided not to testify after the trial had begun." Id. at 3. Petitioner asserts that the statement is a lie. See Dkt. # 20 at 6.

11

counsel would satisfy the first prong of Strickland. Petitioner must also satisfy the prejudice prong of the Strickland standard by demonstrating a reasonable probability that Petitioner's testimony would have raised in a juror's mind a reasonable doubt concerning his guilt. Strickland, 466 U.S. at 694-95. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Because defense counsel failed to present witnesses, the jury did not hear Petitioner's explanation of the incident involving S.M. Petitioner states in his affidavit that during the evening of September 17, 2004, he was home with his wife, Marianne Hewitt.[6] See Dkt. # 20, Ex. 1. Between 6:30 and 7:00 p.m., he was outside smoking a cigarette and kicking a soccer ball when he saw a young boy "carrying a cat litter box and tossing out pieces of feces in the yard where I'm kicking the ball." Id. He told the boy to use the trash dumpster and the boy replied with "something indistinguishable that I believe is, 'Fuck you!'" Id. Petitioner further states that he returned to his apartment and helped his wife with the laundry by making several trips to the apartment complex's laundry room. Id. He states he was arrested as he returned to the apartment after smoking. Petitioner also describes two physical conditions which he claims support his innocence. Id. First, he states that in 1997, he "underwent surgery to remove a serious infection from my penis." Id. As a result, he claims to be "incapable of physical activity including copulation and masturbation."[7] Id.

---

[6]In her affidavit, Marianne Hewitt confirms that Petitioner was at home with her on the evening of September 17, 2004, except when he went outside to smoke and to go to the apartment complex's laundry room. See Dkt. # 20, Ex. 2. She also states that when he came back inside, he told her about the incident with S.M. and the cat litter, and asked why their neighbors could have pets and they couldn't? Id.

[7]The record before the Court includes a "surgical pathology report," dated September 30, 1996, provided by Petitioner in support of a motion for summary judgment. See Dkt. # 42, "Ex. 56." The report includes a clinical diagnosis of "scrotal and penile lesions." Id.

12

He further claims that at the time of his arrest, he had poison ivy on his hands, arm and neck. Id. However, his "groin was not infected indicating that I had not touched my penis." Id. Furthermore, the jury was not afforded the opportunity to hear Petitioner's explanation of incidents surrounding his prior convictions, although Petitioner would have been subjected to cross-examination concerning the incidents if he elected to testify to more than the fact of his prior convictions. See Dodd v. State, 100 P.3d 1017, 1039 (Okla. Crim. App. 2004) ("While a witness's prior convictions for felony offenses, or any crime involving dishonesty, are generally admissible to impeach his credibility as a witness, the nature and details of the prior offense may not be relevant, and may be unduly prejudicial if the witness is the accused.").

Under Strickland, the prejudice prong is established if there is a reasonable probability that defendant's testimony would have raised in a juror's mind a reasonable doubt concerning his guilt. Strickland, 466 U.S. at 694-95. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Upon careful review of Petitioner's affidavit, the Court finds that the information contained therein may be sufficient to undermine confidence in the outcome of this trial. Therefore, if the factual information provided by Petitioner is true, then he may be entitled to habeas corpus relief on his Petitioner's claims of ineffective assistance of trial for refusing to allow him to testify and ineffective assistance of appellate counsel for failing to raise the ineffective assistance of trial counsel claim on direct appeal.

In summary, upon review of the petition, the response, the state court record, and Petitioner's reply, the Court finds that Petitioner is entitled to an evidentiary hearing on his ineffective assistance of counsel claim as he has identified factual issues which are not contravened by the existing trial record, and which, if proven, may entitle him to habeas relief. It is the Court's intention that

evidence presented at the hearing shall be focused on the narrow issues discussed herein: whether trial counsel provided ineffective assistance in refusing to allow Petitioner to testify at trial and whether appellate counsel provided ineffective assistance in failing to raise the ineffective assistance of trial counsel claim on direct appeal.

Pursuant to Rule 8, *Rules Governing Section 2254 Cases*, appointment of counsel for Petitioner is necessary for the evidentiary hearing if Petitioner qualifies for appointment under 18 U.S.C. § 3006A. Although this Court has made no finding of indigence in this matter, the Court notes that Petitioner recently filed a petition for writ of mandamus at the Tenth Circuit Court of Appeals. In that matter, the Tenth Circuit granted Petitioner's motion to proceed *in forma pauperis*. Based on the appellate court's finding of indigence, the Court finds Petitioner qualifies for appointment of counsel under 18 U.S.C. § 3006A. Therefore, the Office of the Federal Public Defender shall assign an attorney from the CJA panel to represent Petitioner at the evidentiary hearing. The evidentiary hearing shall be held on May 2, 2011, at 1:30 p.m.

## *CONCLUSION*

Petitioner is entitled to an evidentiary hearing on his claims of ineffective assistance of trial counsel for refusing to allow him to testify and ineffective assistance of appellate counsel for failing to raise the claim of ineffective assistance of trial counsel on direct appeal.

**ACCORDINGLY IT IS HEREBY ORDERED that:**

1. Petitioner's request for an evidentiary hearing on his claims of ineffective assistance of counsel for refusing to allow him to testify and ineffective assistance of appellate counsel for failing to raise the claim of ineffective assistance of trial counsel on direct appeal is **granted**.

2. The Office of the Federal Public Defender shall assign an attorney from the CJA panel to represent Petitioner for purposes of the evidentiary hearing.

3. The evidentiary hearing will be held on May 2, 2011, at 1:30 p.m.

4. The Clerk of Court shall send a copy of this Order to the Tenth Circuit Court of Appeals to serve as this Court's response in Tenth Circuit Case No. 11-5003.

DATED THIS 8th day of February, 2011.

_____
TERENCE C. KERN
UNITED STATES DISTRICT JUDGE