## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

KENNETH D. HEWITT,⁣                )
⁣                                   )
⁣                       Petitioner, )
⁣                                   )
vs.⁣                                )⁣        **Case No. 08-CV-227-TCK-TLW**
⁣                                   )
DAVID PARKER, Warden,⁣             )
⁣                                   )
⁣                       Respondent. )

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action.  By Opinion and Order filed February 8,

2011 (Dkt. # 58), the Court determined that Petitioner was entitled to an evidentiary hearing on his

claim of ineffective assistance of counsel. The evidentiary hearing was held on May 2, 2011.

Petitioner was represented by attorney Ryan Ray.  Respondent was represented by Assistant

Attorney General Jay Schniederjan.  At the conclusion of the hearing, the Court directed the parties

to file proposed findings of fact and conclusions of law. The parties have complied with the Court's

directive.  See Dkt. #s 72 and 75.  For the reasons discussed below, the Court finds that Petitioner's

trial and direct appeal were marred by ineffective assistance of counsel.  Petitioner is entitled to a

new trial.  Therefore, the petition for writ of habeas corpus shall be granted, conditioned on the

State's commencement of new trial proceedings within 120 days of the entry of this Order.

### *FACTUAL AND PROCEDURAL BACKGROUND*

The Court has previously summarized the facts of this case. See Dkt. # 58. In brief, Petitioner

Kenneth D. Hewitt was charged in Rogers County District Court, Case No. CF-2004-574, with Lewd

Acts With a Child, After Former Conviction of Two or More Felonies. Petitioner refused two plea

offers and proceeded to be tried by a jury on September 14-15, 2005.  At trial, he was represented

by attorney Timothy Wantland.  On the first day of trial, prior to jury selection, Mr. Wantland advised the trial judge that Petitioner waived his statutory right to a bifurcated trial and that he anticipated Petitioner would testify in his own defense. The trial judge made a record to memorialize Petitioner's decision to waive a bifurcated trial and his decision to reject the State's final plea offer. Petitioner acknowledged to the trial judge that the State had made a plea offer of 15 years in custody of the Oklahoma Department of Corrections, that trial counsel advised him that he faced 20 years to life if convicted by the jury, but that it was his decision to reject the plea offer and to waive a bifurcated trial. During voir dire, defense counsel told prospective jurors at least two (2) times that he anticipated Petitioner would testify in his own defense.  Defense counsel also told the jurors that Petitioner had three (3) prior felony convictions, and that one was a "sex-related charge." In addition, Mr. Wantland's entire opening statement was based on what Petitioner would tell the jury when he testified.

During trial, the State presented the testimony of three witness: S.M., the victim; Christopher Don Hopkins, the victim's father; and Douglas Spencer, the police officer who arrested Petitioner. First, S.M., who was eleven (11) years old at the time of the incident, testified that on September 17, 2004, between 7 and 8 p.m., he went outside the apartment where he lived with his father in Catoosa, Oklahoma, to empty his cat's litter box.  As he completed the task, he was approached by a man who asked him, "Do you like the stars?" While the man continued to ask questions, S.M. saw the man put his hand in his pants and "play with himself."  The man asked S.M. if he "like to jaculate [sic]," and then said "I like to jaculate [sic]." As S.M. turned to leave, the man grabbed S.M.'s pants and said, "Please don't tell anybody."  S.M. returned to his apartment where he told his father what had happened.  Christopher Hopkins testified that after S.M. told him what had

2

happened, he then called the police.  Douglas Spencer, one of the officers who responded to the call testified that Petitioner was found in a grassy area near the apartment complex.  His physical description, including the description of the clothes he was wearing and the items he carried, including a ball cap, a dark coat, and QuikTrip mug, matched the description given by S.M.  Mr. Wantland cross-examined all three witnesses. However, nothing in his cross-examination served to advance a defense theory or to impeach the witnesses' credibility.

At the end of the first day of trial, on September 14, 2005, the State rested and the trial judge overruled defense counsel's demurrer. The jury was excused for the evening recess. Trial was scheduled to resume at 9:00 a.m., on the morning of September 15, 2005.  However, Mr Wantland and the prosecutor first entered the courtroom at about 9:30 a.m., followed by the trial judge who made an expressly off-the-record comment apologizing to the jury for the delay, but stating that the delay "saved you four hours."  The judge then instructed the court reporter to go on the record and the trial resumed.  First, certified copies of Petitioner's prior judgments and sentences,[1] along with 3 photographs of the apartment complex, were entered by stipulation. The defense then rested without offering the testimony of Petitioner or any other witness. After hearing the attorneys' closing arguments, including the prosecutor's request that the jury find Petitioner guilty and recommend a sentence of 250 years, the jury returned a verdict of guilty as charged and recommended a sentence of 125 years imprisonment.

---

[1]     The Judgment and Sentence entered in Wagoner County District Court, Case No. CF-01-154, as presented to the jury showed a dismissed charge of sexual battery along with a conviction for indecent exposure. See Dkt. # 19, Tr. Trans. at 264. Neither trial counsel nor the trial judge took action to insure that the dismissed charge was redacted.

On October 6, 2005, the trial court judge sentenced Petitioner to 125 years imprisonment in accordance with the jury's recommendation. Defense counsel lodged no objection to the recommended sentence when afforded the opportunity prior to entry of the sentence.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals ("OCCA"). Represented by attorney Thomas D. McCormick,[2] he raised two (2) propositions of error:

1.      Improper closing argument was allowed.

2.      The Defendant was denied effective assistance of counsel [based on counsel's failure to object to prosecutor's improper closing argument and for waiving a bifurcated trial].

See Dkt. # 17, Ex. 1.  In an unpublished summary opinion filed July 7, 2006, in Case No. F-2005-1019 (Dkt. # 17, Ex. 3), the OCCA rejected both claims and affirmed the Judgment and Sentence of the trial court.

On October 17, 2007, Petitioner filed his application for post-conviction relief (Dkt. # 17, Ex. 4) in the state district court. By order filed December 13, 2007 (Dkt. # 17, Ex. 5), the state district court denied relief on Petitioner's claims that he was improperly denied free transcripts, he was denied the right to testify on his own behalf, the trial court committed error by failing to conduct a bifurcated trial, the trial court erred in failing to properly instruct the jury regarding the significance of the 85% Rule, prosecutorial misconduct, he was denied his right to an impartial jury, the trial court erred by allowing a prosecution witness who was not on the witness list, he was denied allocution, and he was denied effective assistance of trial and appellate counsel. Petitioner appealed to the OCCA.  By Order filed February 28, 2008 (Dkt. # 17, Ex. 6), the OCCA affirmed the denial of post-conviction relief.

---

[2]      Mr. McCormick is now deceased.  See Dkt. # 42, "Ex. 57."

On March 4, 2008, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1) and supporting brief (Dkt. # 4) in the United States District Court for the Western District of Oklahoma. By Order filed April 21, 2008, the case was transferred to this Court. In his supporting brief, Petitioner identifies six (6) grounds for relief, as follows:

Ground 1:    The trial court denied Petitioner due process of law by failing to conduct a bifurcated proceeding.

Ground 2:    Defense counsel and trial court denied Petitioner due process of law by refusing to allow Petitioner to testify, to present witnesses for the defense, or to speak at sentencing.

Ground 3:    Petitioner was denied the right to trial by an impartial jury.

Ground 4:    Petitioner was denied the effective assistance of counsel at trial and on appeal.

Ground 5:    Petitioner's sentence is improper and is a violation of the Eighth Amendment.

Ground 6:    Petitioner was denied due process and equal protection of the law when both trial court and appointed appellate counsel refused to allow Petitioner to view his transcripts.

See Dkt. # 4. In response to the petition, Respondent states that the petition is timely but asserts that Petitioner's claims are not cognizable in these proceedings, or do not justify relief under 28 U.S.C. § 2254(d), or are procedurally barred. See Dkt. # 17.

By Opinion and Order filed February 8, 2011, the Court determined that Petitioner was entitled to an evidentiary hearing on his claim of ineffective assistance of counsel for refusing to allow him to testify. That hearing was held on May 2, 2011. Upon consideration of the evidence presented at the hearing, the Court finds Petitioner is entitled to habeas corpus relief on those claims.

*ANALYSIS*

**A.     Exhaustion**

Before addressing any claim raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Consideration of Petitioner's claims is not precluded by the exhaustion requirement.[3]

**B.     Petitioner is entitled to habeas relief on his claim of ineffective assistance of counsel**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The

---

[3]     With the exception of his challenge to his sentence based on the Eighth Amendment, Petitioner raised all of his claims on either direct or post-conviction appeal.  Even though Petitioner's Eighth Amendment claim has not been presented to the state courts, it would be subject to a procedural bar if he were to return to state court to raise it in a second post-conviction application.

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  In this case, the OCCA adjudicated on direct appeal Petitioner's claims of ineffective assistance of trial counsel for waiving a bifurcated trial and for failing to object to comments made by the prosecutor during closing argument.  The OCCA also adjudicated Petitioner's claims of ineffective assistance of appellate counsel and improper denial of free transcripts on post-conviction appeal.  Therefore, those claims are subject to review under the standard set forth in § 2254(d).

In the prior Opinion and Order, the Court determined that because the OCCA applied the wrong constitutional standard in adjudicating Petitioner's claim of ineffective assistance of appellate counsel, the claim would be reviewed *de novo*.  Cargle v. Mullin, 317 F.3d 1196, 1202-05 (10th Cir. 2003) (explaining that (1) the merit of the omitted claim is the focus of the appellate ineffectiveness inquiry, (2) omission of a sufficiently meritorious claim can, in itself, establish ineffective assistance, and, thus, (3) the state court's rejection of an appellate ineffectiveness claim on the basis of the legal premise invoked here is wrong as a matter of federal constitutional law); see also Malicoat v. Mullin, 426 F.3d 1241, 1248 (10th Cir. 2005) (following Cargle). The Court further found that because Petitioner had identified factual issues which were not contravened by the existing trial record, and which, if proven, may entitle him to habeas relief, Petitioner was entitled to an evidentiary hearing on his claim of ineffective assistance of counsel.  The specific issues to be examined were whether trial counsel provided ineffective assistance in refusing to allow Petitioner to testify at trial and whether appellate counsel provided ineffective assistance in failing to raise the ineffective assistance of trial counsel claim on direct appeal.

7

Respondent urges the Court to reassess its prior determination that the OCCA's adjudication of Petitioner's ineffective assistance of appellate counsel claim was contrary to federal law in light of the Supreme Court's holdings in <u>Harrington v. Richter</u>, 131 S. Ct. 770 (2011) (explaining the interaction between the habeas standard found at § 2254(d) and the standard applicable to review of ineffective assistance of counsel claims provided by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)), and <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1398-1401 (2011) (finding habeas corpus review of a state court adjudication under § 2254(d) to be limited to the record before the state court). <u>See</u> Dkt. # 75. Neither <u>Richter</u> nor <u>Pinholster</u> alter this Court's previous determination that the OCCA applied the wrong constitutional standard to Petitioner's ineffective assistance of appellate counsel claim. Respondent argues that the case cited by the OCCA, <u>Cartwright v. State</u>, 708 P.2d 592 (1985), in turn applies the <u>Strickland</u> standard as required by the Supreme Court. However, in denying claims of ineffective assistance of appellate the OCCA routinely misstates the applicable standard. When the OCCA states, as it did in this case, that "[f]ailure to raise each and every issue is not determinative of ineffective assistance of counsel and counsel is not required to advance every cause of argument [sic] *regardless of merit*," <u>see</u> Dkt. # 11, Ex. 5 (emphasis added), this Court can only conclude that the OCCA would find that appellate counsel provides constitutionally effective assistance even if a meritorious claim is omitted on direct appeal. However, no Supreme Court opinion stands for the proposition espoused by the OCCA: that appellate counsel is not required to advance a meritorious argument. The OCCA's misstatement of the standard governing ineffective assistance of appellate counsel claims may be traced to its misstatement of the Supreme Court's holding in <u>Jones v. Barnes</u>, 463 U.S. 745 (1983). In <u>Barnes</u>, the Supreme Court addressed "whether a criminal defendant has a constitutional right to have appellate counsel raise every nonfrivolous

8

issue that the defendant requests." Id. at 754 n.7.  The Supreme Court ruled that "[n]othing in the Constitution or our interpretation of that document requires such a standard." Id. at 754.  The OCCA has morphed the holding of Barnes into the misstatement of the law set forth in Cartwright, 708 P.2d at 593-94, in this case, and in numerous other cases, i.e., that appellate counsel "is not required to advance every argument regardless of merit."  Because that legal premise is wrong as a matter of federal constitutional law, this Court owes no deference to the OCCA's adjudication of Petitioner's ineffective assistance of appellate counsel claim.  Malicoat, 426 F.3d at 1248; Cargle, 317 F.3d at 1202-05.  Therefore, Petitioner's claim of ineffective assistance of appellate counsel will be reviewed de novo.

Under Strickland v. Washington, 466 U.S. 668 (1984), a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Id. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.  To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A

9

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. Id.; see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing United States v. Cook, 45 F.3d 388, 392-93 (10th Cir. 1995)). "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." Richter, 131 S. Ct. at 791 (quoting Strickland, 466 U.S. at 686). "The Strickland standard must be applied with 'scrupulous care.'" Pinholster, 131 S. Ct. at 1408 (quoting Richter, 131 S. Ct. at 788). As noted in Richter, "[e]ven under de novo review, the standard for judging counsel's representation is a most deferential one." Richter, 131 S. Ct. at 788.

At the evidentiary hearing, the Court heard testimony relevant to the issue of whether appellate counsel provided ineffective assistance in failing to argue that trial counsel provided ineffective assistance in not allowing Petitioner to testify. In Cannon v. Mullin, 383 F.3d 1152 (10th Cir. 2004), the Tenth Circuit Court of Appeals addressed a habeas petitioner's claim that his trial attorney had not allowed him to testify. The Tenth Circuit summarized the relevant law as follows:

> A criminal defendant has a constitutional right to testify in his own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987). The decision whether to testify lies squarely with the defendant; it is not counsel's decision. Jones v. Barnes, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L.Ed.2d 987 (1983). Defense counsel should inform the defendant that he has the right to testify and that the decision whether to testify belongs solely to him. See Teague, 953 F.2d

10

at 1533-34. Counsel should also discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant. See id. Yet counsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy. See United States v. Janoe, 720 F.2d 1156, 1161 & n. 10 (10th Cir. 1983).

Cannon, 383 F.3d at 1171-72.

At the evidentiary hearing, Petitioner presented four (4) witnesses: himself, his wife, his father, and his sister. See Dkt. # 71, Evid. Hr'g Trans. Counsel for Respondent presented two (2) witnesses: Petitioner's trial counsel, Timothy Wantland, and Kacy Himes, the victim in the incident resulting in Petitioner's prior indecent exposure conviction. Id. Petitioner testified that prior to trial, he met with his defense attorney, Mr. Wantland, one time outside the courtroom.  That meeting lasted about four (4) minutes and took place at the Rogers County Jail. Id. at 26. Petitioner testified that he never discussed the theory of the case with Mr. Wantland, id. at 8, and that Mr. Wantland made no recommendations to him concerning whether or not he should testify. Id. On the second day of trial, after the state rested the previous day, Petitioner testified that he asked Mr. Wantland if they could review his testimony. Id. at 9. Mr. Wantland responded, "[n]o, you will not be testifying. You're going home." Id. Mr. Wantland then rested the case without calling witnesses. The events of the second morning of trial, including Petitioner's request to Mr. Wantland to review his anticipated testimony and Mr. Wantland's responsive effort to "hush" Petitioner and admonishment that he would not be testifying, were corroborated by the testimony of Petitioner's wife, father, and sister, who were all present in the Rogers County courtroom.  Id. at 32, 43, 47.

In stark contrast to Mr. Hewitt's version of events, attorney Timothy Wantland testified that he "absolutely" discussed trial strategy with Mr. Hewitt, id. at 54, and that he met privately with Mr. Hewitt in an anteroom outside the courtroom before trial reconvened on the second morning, id. at

56. He further testified that Mr. Hewitt told him that he did not want to have to testify and that he, Mr. Wantland, "did not disagree" based on what they believed to be "weaknesses of the case." Mr. Wantland cited three weaknesses: the time of day of the incident, the age of the complaining witness, and "the parts of not being able to identify every aspect of it." Id. at 55. He stated his belief that "we could create doubt that Mr. Hewitt was the one that the state was saying did these thing." Id. Mr Wantland denied telling Petitioner he could not testify and that he would walk out of court a free man. Id. at 59-60.

Under the facts of this case, Petitioner's claim that he intended to testify until he was told by counsel that "no, he would not be testifying" is more credible that Mr. Wantland's claim that Petitioner himself decided not to testify. The record reflects that during voir dire, trial counsel told the prospective jurors at least two (2) times that Petitioner would take the stand to tell his side of the story. See Dkt. # 19, Tr. Trans. at 19, 109. In addition, during his opening statement, Mr. Wantland told the jurors repeatedly that he anticipated that Petitioner would testify. Id. at 137-38. Mr. Wantland's opening statement centered around Petitioner's anticipated testimony. The State's case rested on the testimony of the victim, a boy who was eleven (11) years old at the time of the incident. The boy's father and the arresting police officer testified that they acted on what they had been told by the victim. The victim identified Petitioner as the man who approached him outside the apartments and that Petitioner was the man who was "playing around with himself." There was no evidence even remotely suggesting that any other man was observed in the area outside the apartments. In the absence of testimony by Petitioner or any evidence supporting a defense, the jury had no option but to accept the victim's uncontroverted testimony and find Petitioner guilty of the crime charged.

12

Mr. Wantland testified at the evidentiary hearing held in this habeas proceeding that he thought the State's case against Petitioner was weak.  See Dkt. # 71 at 54-55.  He stated that he "thought we could create doubt that Mr. Hewitt was the one that the State was saying did these things."  Id. at 55.  The Court finds Mr. Wantland's statement puzzling at best.  Although the only evidence against Petitioner was the victim's testimony, there were few inconsistencies in the testimony presented by the State and absolutely no evidence that some other man was present and could have been responsible for the incident described by the victim.[4]

The Court is also puzzled by Mr. Wantland's failure to make a record concerning Petitioner's failure to testify.  Despite having focused his voir dire and opening statement on Petitioner's anticipated testimony, Mr. Wantland simply stipulated to admission of Petitioner's prior judgments and sentences and announced "at this time, the defense would rest" on the morning of the second day of trial. See Dkt. # 19, Tr. Trans. at 230-31. If Petitioner had made the decision not to testify, as stated by Mr. Wantland at the evidentiary hearing, see Dkt. # 71, Evid. Hr'g Trans. at 54, then it would have certainly been important for Mr. Wantland to have made a record of that decision, especially in light of his opening statement to the jury.  On the first morning of trial, the trial court made a record to reflect that Petitioner had participated in and agreed with the decision to waive his right to a bifurcated trial.  See Dkt. # 19, Tr. Trans. at 5.  The trial court also made a record to reflect that Petitioner had rejected the State's plea offer of fifteen (15) years.  See id. at 7-8.  However, no

---

[4]     During cross-examination of the victim's father, Mr. Wantland asked about a woman who was sitting in a lawn chair outside of the victim's apartment on the evening of September 17, 2004.  See Dkt. # 19, Tr. Trans. at 210.  However, there was no testimony that another man was present outside the apartment complex at the time of the incident.  Furthermore, throughout this proceeding, Petitioner has admitted that he spoke to the boy on the night of his arrest.  The logical defense to be pursued at trial was not that the police arrested the wrong man, but simply that Petitioner did not engage in lewd acts in front of the boy.

record was made concerning the sudden change in trial strategy reflected by Petitioner's failure to testify. Had it truly been Petitioner's decision, then it should have been memorialized on the record, especially in light of the dire consequences resulting from the uncontroverted testimony of the State's witnesses, the stipulation of three prior felony convictions including one for indecent exposure, and trial counsel's failure to request redaction of a dismissed charge of sexual battery.[5]

Having found Petitioner's version of the events surrounding his failure to testify to be more credible, the Court finds trial counsel performed deficiently in not allowing Petitioner to testify. As noted in <u>Cannon</u>, "counsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy." <u>Cannon</u>, 383 F.3d at 1172. To be entitled to habeas relief, however, Petitioner must also satisfy the prejudice prong of the <u>Strickland</u> standard. He must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

At the evidentiary hearing, Petitioner testified that had he been allowed to testify at trial he would have told the jury about his encounter with S.M., the boy who made the accusations against him. <u>See</u> Dkt. # 71, Evid. Hr'g Trans. at 10-15. Petitioner would have told the jury that he told the boy to use the trash dumpster for the contents of his cat's litter box. <u>Id.</u> at 10. In response, the boy scowled and kept tossing cat litter in the grass. <u>Id.</u> Petitioner told him "I'll whip you, little boy," <u>id.</u>,

---

[5]     The Court is also bothered by the trial judge's expressly off-the-record comment, made upon her entry into the court room on the second day of trial prior to resumption of trial proceedings, that her delay "saved them four hours." Mr. Wantland testified at the evidentiary hearing, <u>see</u> Dkt. # 71 at 76-77, that the comment followed his meeting with the prosecutor and the trial judge in chambers. During that meeting, he told the judge that the defense would not be presenting witnesses and they finalized jury instructions. Petitioner was not present during the meeting in chambers.

and then had no further conversation with the boy. Id. at 11. He would have also testified that at the time of his arrest, he had poison ivy on his hands, arms, neck, and face, but none in his groin area. Id. at 14. He also had surgery in 1996 that left him incapable of having an erection. Id. at 14-15, 28. However, because Petitioner did not testify, the jury heard only the testimony from the State's witnesses. This is not a case where a defendant was denied the right to testify where the State's evidence was overwhelming. See, e.g., United States v. Lott, 365 Fed. Appx. 946 (10th Cir. 2010) (unpublished)[6]; Battle v. Sirmons, 304 Fed. Appx. 688 (10th Cir. 2008) (unpublished); United States v. Walters, 163 Fed. Appx. 674 (10th Cir. 2006) (unpublished); United States v. Hunt, 62 Fed. Appx. 257 (10th Cir. 2003) (unpublished). Petitioner's testimony not only would have provided a reason for S.M. to have fabricated his claims against Petitioner but also would have called into doubt the only evidence against him, the testimony of S.M. Cf. United States v. Hanrahan, 2010 WL 2292912 (D. N.M. 2010) (unpublished) (finding no constitutional violation where defendant's side of the story was before the jury even without his testimony). Without Petitioner's testimony, the prosecutor was able to state during his final closing argument that "the inconsistencies in this trial are zero. The testimony is uncontroverted. You heard no other version from any other witness." See Dkt. # 19, Tr. Trans. at 252. The prosecutor concluded, without drawing an objection from defense counsel, by asking the jury to "[r]eturn a verdict of guilty, and that you assess punishment at 250 years in Department of Corrections, so that he will not be back." Id. at 256.

Even though Petitioner's credibility would have been challenged with his prior convictions, including a conviction for felony indecent exposure, Mr. Wantland had already told the jurors during voir dire that Petitioner had prior convictions, including a sex-related conviction. Clearly, Mr.

---

[6]     This and other unpublished opinions are cited for persuasive value. See 10th Cir. R. 32.1(A).

Wantland believed Petitioner would testify and decided to take the "sting" out of the prior convictions by admitting them during voir dire. Petitioner's testimony may have been enough to create reasonable doubt for at least one juror and, therefore, to undermine confidence in the outcome of Petitioner's trial. Having satisfied both prongs of the <u>Strickland</u> standard, Petitioner's claim of ineffective assistance of trial counsel is meritorious. Appellate counsel provided ineffective assistance in failing to raise this claim on direct appeal. Petitioner's request for habeas corpus relief shall be conditionally granted.

## C.  Petitioner is not entitled to habeas relief on his remaining claims

### 1. Ineffective assistance of trial counsel (part of ground 4)

Petitioner's remaining claims of ineffective assistance of trial counsel are, in large part, subsumed by the Court's finding merit to Petitioner's claim of ineffective assistance of counsel for refusing to allow him to testify. For example, as discussed above, trial counsel clearly anticipated that Petitioner would testify. Therefore he did not provide ineffective assistance in waiving a bifurcated trial or in discussing Petitioner's record of prior convictions with prospective jurors during voir dire. Petitioner is not entitled to relief on this claim under 28 U.S.C. § 2254(d).

The Court further finds that Petitioner has not satisfied the <u>Strickland</u> standard as to his claim that trial counsel provided ineffective assistance in failing to object to comments made by the prosecutor in closing argument. The Court has reviewed the allegedly improper comments[7] in the

---

[7]     On direct appeal, Petitioner complained that during closing argument, the prosecutor erroneously stated that he represented the child, expressed his personal opinion regarding guilt, cast Petitioner as a threat to society, improperly stated that the child would suffer harm unless Petitioner were found guilty, vouched for the credibility of the victim, and improperly stated that Petitioner needed a severe sentence so that he would not be returned to society. <u>See</u> Dkt. # 17, Ex. 1.

context of the parties' closing arguments and in light of the evidence presented at trial. The Court finds the comments were objectionable and counsel should have objected. However, failure to do so does not satisfy the standard for ineffective assistance of counsel. Petitioner is not entitled to habeas relief on this claim.

### 2.  Ineffective assistance of appellate counsel (part of ground 4)

In his supporting brief (Dkt. # 4), Petitioner alleges that his appellate counsel provided ineffective assistance when he failed to raise on direct appeal the habeas claims raised by Petitioner in his application for post-conviction relief. Petitioner raised this claim of ineffective assistance of appellate counsel in his post-conviction proceedings. As discussed above, the legal standard cited by the OCCA in denying Petitioner's claim of ineffective assistance of appellate counsel deviates from the controlling federal standard. Cargle, 317 F.3d at 1202-05. Therefore, the Court will analyze Petitioner's additional claims of ineffective assistance of appellate counsel *de novo*.

Petitioner complains that his appellate counsel refused to raise the claims identified in the habeas petition on direct appeal. See Dkt. # 4 at 19. Those claims include grounds 1, 2, 3, part of 4, 5, and 6. The Court has determined above that appellate counsel provided ineffective assistance in failing to challenge trial counsel's failure to allow Petitioner to testify. Many of Petitioner's remaining claims of ineffective assistance of appellate counsel are linked to his failure to testify. To the extent Petitioner's remaining claims can be separated from his claim regarding his failure to testify, the claims omitted by appellate counsel lack merit.

### a.  Trial court's denial of right to due process by failing to conduct a bifurcated proceeding

As discussed above, appellate counsel argued on direct appeal that trial counsel provided ineffective assistance in waiving a bifurcated trial. In his habeas petition, Petitioner argues as his

first proposition of error that he was denied due process by the trial court's failure to conduct a bifurcated trial. However, the Supreme Court has held that there is no federal constitutional right to a bifurcated trial.  Spencer v. Texas, 385 U.S. 554, 568 (1967) ("Two-part jury trials . . . have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure.").  As a result, the trial court's acquiescence in Petitioner's decision to waive a bifurcated trial did not result in a denial of due process.  As this claim lacks merit, appellate counsel did not provide ineffective assistance in failing to raise this claim on direct appeal. Cook, 45 F.3d at 392-93.

>   **b.    Denial of effective assistance of counsel and due process by refusing to allow Petitioner to testify, to present witnesses for the defense, or to speak at sentencing**

The Court has found merit to Petitioner's claims that appellate counsel provided ineffective assistance in failing to argue that trial counsel provided ineffective assistance in refusing to allow him to testify.  Counsel's failure to call other witnesses for the defense does not constitute ineffective assistance.  Marianne Hewitt's testimony would not have provided an alibi and would have otherwise been cumulative of Petitioner's testimony. Therefore, trial counsel did not provide ineffective assistance in failing to call Marianne Hewitt as a witness.

The Court also finds that appellate counsel did not perform deficiently in failing to raise a claim based on the trial court's failure to allow Petitioner to speak at sentencing.  The sentencing transcript reflects that prior to formal sentencing, the following exchange took place:

THE COURT:          Mr. Wantland, do you have anything further on your client's behalf?

MR. WANTLAND:   No, Your Honor.

THE COURT:          Mr. Hewitt, anything that you wish to say before sentencing is imposed?

THE DEFENDANT:  No, Your Honor.

18

THE COURT:  The testimony at this trial was chilling to me in its simplicity and in the obvious dark compulsion, Mr. Hewitt, that drives you to do what you do.  I believe that you are, undoubtedly, a menace to society, as the State has said, if society includes young children and children that are in your presence without any supervision by another adult.

    The Court finds that the jury verdict was arrived at by persons who are charged by the law to make punishment recommendations and I would not disturb that jury verdict.

    You are ordered to serve one hundred and twenty-five years in the Department of Corrections' custody, pursuant to what the jury had recommended.  You are ordered to pay a fine of one thousand dollars.  You are likewise ordered to pay a fifty dollar Victim's Compensation Assessment and Court Cost.

THE DEFENDANT:  Your Honor, may I ask – speak of the testimony given in court?

THE COURT:  No, Mr. Hewitt, your time to speak is over.  There is nothing that I want to hear from you right now.

(Dkt. # 19-2, Sent. Trans. at 7-9).   That record reflects that, contrary to Petitioner's allegation, the trial court judge afforded Petitioner the opportunity to speak just prior to imposition of sentence. However, Petitioner declined to say anything.  Only after the trial court judge imposed sentence did Petitioner request to speak.  At that point, it was too late.  Petitioner was not denied due process at sentencing.  Neither trial nor appellate counsel provided ineffective assistance of counsel.

### c. Denial of right to an impartial jury

In his third proposition of error, Petitioner contends that he was deprived of an impartial jury when his trial counsel waived his right to a bifurcated trial and informed the prospective jurors during voir dire that Petitioner had three prior felony convictions, including one for indecent exposure.  See Dkt. # 4 at 13.  He claims appellate counsel provided ineffective assistance in failing to raise this claim on direct appeal.  The Sixth Amendment, as applicable to the states through the Fourteenth Amendment, and principles of due process guarantee a criminal defendant in state court an "impartial jury."  Ristaino v. Ross, 424 U.S. 589, 595 n.6 (1976) (citations omitted); Ross v.

Oklahoma, 487 U.S. 81, 85 (1988). "[T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." Lockhart v. McCree, 476 U.S. 162, 184 (1986). In Ross v. Oklahoma, the Supreme Court found that any claim of jury impartiality must focus on the jurors who ultimately sat. Ross, 487 U.S. at 86. The Supreme Court has also stressed that the trial court is granted wide discretion in conducting voir dire in areas of inquiry that might tend to show juror bias. Mu'min v. Virginia, 500 U.S. 415, 427 (1991). "Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." Id. at 431.

During voir dire, both the prosecutor and trial counsel informed the prospective jurors of Petitioner's prior convictions.  Defense counsel told the jurors that the fact that Petitioner had prior convictions did not mean that he was guilty of the crime charged. See Dkt. # 19-1 at 97-98.  At the evidentiary hearing, Mr. Wantland testified that this strategy was based on the fact that he believed Petitioner would testify. See Dkt. # 71 at 53. Based on the prospective jurors' responses, he could determine whether any prospective juror harbored bias or prejudice against Petitioner because of his prior convictions. Other than the fact that he was found guilty, Petitioner points to nothing suggesting that his jury was not impartial.  After careful review of the record, the Court concludes that Petitioner's claim that he was denied the right to trial by an impartial jury lacks merit. Therefore, appellate counsel did not perform deficiently in failing to raise this claim on direct appeal.

### d.      Ineffective assistance of trial counsel

In his brief in support (Dkt. # 4), Petitioner identifies numerous claims of ineffective assistance of trial counsel that were not raised on direct appeal.  He claims that his first court-appointed attorney, Robert Price, provided ineffective assistance in advising him to plead guilty and then withdrawing when Petitioner refused to plead guilty.  He also claims that trial counsel, Timothy Wantland, provided ineffective assistance of counsel in failing to prepare Petitioner for trial; in failing to request that the jury be instructed on the 85% Rule; in failing to conduct proper voir-dire; in failing to engage in meaningful cross-examination and utilize potent impeachment evidence; in failing to adequately investigate to identify evidence; in failing to utilize available evidence; in failing to present witnesses for the defense; and in failing to act as loyal advocate for Petitioner throughout trial and at sentencing.

The Court has addressed Petitioner's claim that appellate counsel was ineffective in failing to raise on direct appeal Petitioner's claim that trial counsel provided ineffective assistance in failing to present witnesses for the defense above. The Court further finds that appellate counsel did not provide ineffective assistance in failing to raise the additional claims of ineffective assistance. As to Petitioner's claim concerning the representation provided by attorney Price, Petitioner cannot demonstrate that he was prejudiced by Mr. Price's advice to plead guilty.  Petitioner clearly desired a jury trial and he received a jury trial.  In addition, the record reflects that by minute order filed February 23, 2005, while Petitioner was represented by Mr. Price, a change of plea hearing was scheduled for March 7, 2005. See Dkt. # 19-3, O.R. at 26. Two days later, on February 25, 2005, Petitioner, represented by Mr. Wantland, filed a motion to set aside waiver of jury trial. Id. at 27. Thus, because another attorney, Mr. Wantland, was promptly appointed to represent Petitioner,

Petitioner cannot demonstrate prejudice based only on the fact that Mr. Price withdrew from representation.  Petitioner's claim of ineffective assistance by Mr. Price lacks merit and appellate counsel did not provide ineffective assistance in failing to raise the claim on direct appeal.

Mr. Wantland's failure to allow Petitioner to testify at trial has been discussed above. Petitioner's other specific claims lack merit. First, Petitioner alleges that Mr. Wantland failed to consult with him prior to trial.  However, Petitioner has failed to support this claim with any facts demonstrating how he was prejudiced by this alleged failure.  Conclusory allegations are insufficient to entitle a petitioner to relief.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se plaintiffs must allege sufficient facts on which a recognized legal claim can be based, and that conclusory allegations will not suffice).  Similarly, Petitioner's claim that Mr. Wantland failed to otherwise "act as loyal advocate" is undeveloped and conclusory and does not entitle Petitioner to habeas relief. Because these claims of ineffective assistance of trial counsel lack merit, appellate counsel did not provide ineffective assistance in failing to raise the claim on direct appeal.

Next, Petitioner claims that trial counsel provided ineffective assistance in failing to request that the jury be instructed on the 85% Rule. Under the 85% Rule, as applicable to the facts of this case, "[p]ersons convicted of: [l]ewd molestation of a child as defined in Section 1123 of [Title 21] . . . shall be required to serve not less than eighty-five percent (85%) of any sentence of imprisonment imposed by the judicial system prior to becoming eligible for consideration for parole." Okla. Stat. tit. 21, § 13.1 (2002).  At the time of Petitioner's trial, held September 14-15, 2005, an instruction on the 85% Rule was not required under Oklahoma law. On February 22, 2006, or more than five (5) months after Petitioner's trial, the OCCA held that trial courts should instruct jurors on the 85% Rule prior to sentencing. Anderson v. State, 130 P.3d 273, 283 (Okla. Crim. App.

2006). The <u>Anderson</u> court, however, specified that its holding was prospective and did not apply to "cases before this decision." <u>Id.</u> Petitioner's trial counsel did not perform deficiently in failing to anticipate the change in law by requesting an instruction on the 85% Rule. <u>See</u> <u>Haney v. Addison</u>, 275 Fed. Appx. 802, 806 (10th Cir. 2008) (unpublished) ("[T]he failure of Mr. Haney's lawyer to request an instruction on the 85% Rule did not constitute ineffective assistance of counsel because <u>Anderson</u> was not decided until four months after his trial."), *cert. denied*, 129 S. Ct. 766 (Dec. 15, 2008); <u>Cheadle v. Dinwiddie</u>, 278 Fed. Appx. 820, 823 (10th Cir. 2008) (unpublished) ("Although the OCCA recently changed its position with regard to whether the jury can be instructed on how much time a defendant must serve before parole eligibility, that court did not base its change on anything in the United States Constitution, nor did it apply the new rule retroactively. In sum, Cheadle has not shown appellate counsel was constitutionally ineffective for failing to critique the work of trial counsel." (citing <u>Anderson</u>, 130 P.3d at 283)), *cert. denied*, 129 S. Ct. 918 (Jan. 12, 2009). In this case, therefore, trial counsel was not constitutionally ineffective and appellate counsel did not provide ineffective assistance in failing to raise this claim on direct appeal.

Petitioner also claims that trial counsel provided ineffective assistance in failing to conduct proper voir dire. To the extent Petitioner's claim is based on trial counsel's discussion of Petitioner's prior convictions with prospective jurors, the Court finds that because trial counsel anticipated that Petitioner would testify, it was proper for counsel to use the discussion to determine whether any potential jury member harbored bias or prejudice against Petitioner because of his prior convictions. This claim of ineffective assistance of trial counsel lacks merit and appellate counsel did not provide ineffective assistance in failing to raise the claim on direct appeal.

Petitioner also alleges that trial counsel failed to engage in meaningful cross-examination and utilize potent impeachment evidence.  In his reply (Dkt. # 20), Petitioner claims that trial counsel failed to pursue his allegations that Officer Spencer lied at preliminary hearing, that Catoosa Police did not recover a black jacket or QuikTrip cup because Petitioner had no such items, that S.M. described someone in a white hat and that Petitioner's hat was dark blue, that the same investigating Catoosa police officers had recently harassed and threatened Petitioner on numerous occasions, that S.M. and his father were later evicted from the apartments because of S.M.'s "excessive and extreme vandalism," that S.M. made a faulty identification based on the officers' exclamation that "we've got the sex offender," and that the police reports and Information Sheet failed to identify anyone named Christopher Hopkins as being present at the time of the incident. These claims are, in large part, speculative and lacking evidentiary support. Petitioner does provide a Rogers County Jail property receipt reflecting a list of property items picked up by Marianne Hewitt on September 23, 2004, and on September 15, 2005. See Dkt. # 20, Ex. 7.  That list includes a blue cap. Id. It does not include a dark coat, a QuikTrip bottle, or a white ball cap. Id.  However, the fact that those items are not on the list does not necessarily lead to the conclusion that Petitioner was not wearing a white ball cap and did not have a QuikTrip bottle or dark coat at the time of his arrest. In addition, because trial counsel anticipated calling Petitioner as a witness, those discrepancies could have been explored during Petitioner's testimony.  Because the Court has addressed counsel's failure to allow Petitioner to testify, no further relief on this claim of ineffective assistance of trial counsel is warranted.

**e.      Excessive sentence**

As his fifth proposition of error, Petitioner complains that his 125 year sentence is improper and a violation of the Eighth Amendment.   He claims appellate counsel provided ineffective assistance in failing to raise this claim on direct appeal.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." Ewing v. California, 538 U.S. 11, 20 (2003) (citation and internal quotations omitted). The proportionality principle, however, "reserves a constitutional violation for only the extraordinary case." Lockyer v. Andrade, 538 U.S. 63, 77 (2003); see also United States v. Gillespie, 452 F.3d 1183, 1190-91 (10th Cir. 2006) (summarizing Supreme Court precedent on the proportionality principle and noting that "the [Supreme] Court has only twice invalidated a sentence under the Eighth Amendment: once in 1910, when the defendant was sentenced to fifteen years in chains and hard labor for falsifying a public document; and most recently in 1983, when the defendant was sentenced to life without parole after committing six nonviolent felonies including writing a bad $100-dollar check") (citations omitted). As the Tenth Circuit has instructed, courts "are reluctant to interfere with the legislative determination of an appropriate sentence range." Hawkins v. Hargett, 200 F.3d 1279, 1285 (10th Cir. 1999).  Application of the narrow proportionality principle has, therefore, been reserved to the truly extraordinary case involving a sentence grossly disproportionate to the crime of conviction. Id. at 1282; see also United States v. Angelos, 433 F.3d 738, 750 (10th Cir. 2006); United States v. Gurule, 461 F.3d 1238, 1247 (10th Cir. 2006).

In this case, Petitioner was found guilty of Lewd Acts with a Child, After Former Conviction of Two or More Felonies, and was sentenced to 125 years.[8]   Petitioner's prior convictions, for Assault and Battery on a Police Officer, Assault and Battery With a Dangerous Weapon, and Felony Indecent Exposure, included crimes of violence and a sex offense. The sentencing range provided by the Oklahoma recidivist statute is 20 years to life imprisonment. While Petitioner's sentence was arguably disproportionate as punishment for his actual conduct, it is not grossly disproportionate to his crime as determined by Supreme Court rulings.  See Harmelin v. Michigan, 501 U.S. 957, 994 (1991) (holding that a sentence of life without parole is not disproportionate to a first-time offender's conviction of possession of cocaine). Petitioner fails to present the extraordinary case needed to establish a violation of his Eighth Amendment rights. Appellate counsel did not provide ineffective assistance in failing to raise this claim on direct appeal.

### 3.     Denial of due process and equal protection by refusing to allow Petitioner to access transcripts

In ground six of his petition, Petitioner claims he was denied due process and equal protection when he was denied access to his transcripts.  In support of this claim, Petitioner provides a letter from his appellate counsel stating that "I cannot provide copies of the transcripts in that you have not paid for these items and they must be returned to the Court Clerk upon completion of the case."  See Dkt. # 4, Ex. 11. Petitioner also sought copies of the transcript prior to filing his application for post-conviction relief.  However, his request was denied. On post-conviction appeal, the OCCA denied relief on Petitioner's claim that he had been denied copies of the transcripts in

---

[8]     In closing argument, the prosecutor requested "that you return a verdict of guilty, and that you assess punishment at 250 years in the Department of Corrections, so that he will not be back."  See Dkt. # 19-1, Tr. Trans. at 256.  Under the facts of this case, that request should have at the very least drawn an objection from defense counsel.

violation of due process, stating that "Petitioner's request for free transcripts was addressed and denied by this Court in an Order issued October 9, 2007, Case No. MA 2007-0949." See Dkt. # 17, Ex. 6.  In the order cited by the OCCA, the state appellate court cited Okla. Stat. tit. 22, § 1080, and Tiger v. State, 859 P.2d 1117 (Okla. Crim. App. 1993), and found that "[u]ntil Petitioner files an application for post-conviction relief in the District Court which makes a showing of need and raises a genuine issue of material fact, Petitioner would not be entitled to transcripts at public expense." See Dkt. # 19-4 at 146.

It is clear that the Due Process and Equal Protection Clauses of the fourteenth amendment require states to provide indigent inmates transcripts when such transcripts are essential to achieving adequate appellate review. Griffin v. Illinois, 351 U.S. 12, 18-19 (1956). Courts generally have refused to recognize an indigent's constitutional right to a personal transcript, however, when a transcript has been made available to his or her counsel. See, e.g., Anderson v. Tomasic, 930 F.2d 32 (10th Cir. 1991) (unpublished); Gay v. Watkins, 579 F.Supp. 1019, 1021 (E.D. Pa. 1984); United States v. Davidson, 438 F.Supp. 1253, 1255 (N.D. Ind. 1977).

In this case, Petitioner's appellate counsel had access to the trial transcript.  As a result, Petitioner's rights to due process and equal protection were not violated because he was not personally provided a copy of the transcript for purposes of direct appeal. Anderson, 930 F.2d 32. To the extent Petitioner's ground 6 claim is based on lack of a personal copy of the trial transcript for purposes of direct appeal, the claim shall be denied

Next, Petitioner's claim that the state courts' denial of his request for transcripts for preparation of his application of post-conviction relief violated his rights to due process and equal protection is a challenge to Oklahoma's post-conviction procedures.  It is well established that the

27

federal writ of habeas corpus reaches only convictions in violation of the United States Constitution, laws, or treaties. E.g. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Pulley v. Harris, 465 U.S. 37, 41 (1984); Smith v. Phillips, 455 U.S. 209, 221 (1982); Brinlee v. Crisp, 608 F.2d 839, 843 (10th Cir. 1979). In this regard, the Supreme Court has stated that "[f]ederal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. at 221. The Tenth Circuit Court of Appeals has held that an attempt by a habeas petitioner to challenge "the Oklahoma post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding." Steele v. Young, 11 F.3d 1518, 1521, 1524 (10th Cir. 1993); see also Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) (holding that an alleged deprivation of due process based on the state appellate court's refusal to grant post-conviction review was not cognizable on federal habeas corpus "because the constitutional error he raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration"); Graves v. Boone, No. 99-7013, 1999 WL 1079626, at *2 (10th Cir. Nov. 30, 1999) (unpublished) ("Mr. Graves' challenges to Oklahoma's post-conviction procedures do not amount to federal constitutional claims in a federal habeas action.").

Petitioner's challenge to the state courts' denial of free transcripts for preparation of his application for post-conviction relief is a challenge to Oklahoma post-conviction procedures and fails to state the deprivation of a federal constitutional right. Thus, the claim in Ground 6 based on Oklahoma's post-conviction procedures shall be denied for failure to state a cognizable claim for habeas relief.

**4.  Procedural bar**

Petitioner first raised his claims that he was denied due process by the trial court's failure to conduct a bifurcated trial (ground 1), that he was denied his right to an impartial jury (ground 3), and that trial counsel provided ineffective assistance of counsel for failing to "prepare Petitioner for trial; request jury instruction; conduct proper vior-dire [sic]; engage in meaningful cross-examination and utilize potent impeachment evidence; adequately investigate to identify evidence; utilize available evidence; present witnesses for the defense; object to instances of prosecutional [sic] misconduct; and to act as loyal advocate for Petitioner throughout trial and at sentencing" (grounds 2 and 4) on post-conviction appeal.  See Dkt. # 17, Ex. 4. The record also confirms that Petitioner has never presented his excessive sentence claim (ground 5) to the OCCA.[9]

In resolving Petitioner's claims of ineffective assistance of appellate counsel, the Court has determined that, with the exception of his claim of ineffective assistance of trial counsel for refusing to allow him to testify, none of the claims raised in the application for post-conviction relief has sufficient merit and that appellate counsel did not provide ineffective assistance in failing to raise the claims. Therefore, the Court finds it unnecessary to engage in a lengthy analysis of procedural bar.  Because the claims identified above, as raised in Petitioner's post-conviction application, lack merit, Petitioner is not entitled to habeas corpus relief on those claims.

---

[9]      In his reply (Dkt. # 20), Petitioner states that he did present his excessive sentence claim to the OCCA as part of ground XI as raised in his application for post-conviction relief. However, in ground XI, Petitioner argued that he had been denied the effective assistance of counsel. As part of that claim, he argued that "Wantland said and did nothing to protect Hewitt's right to allocution nor to dissuade Judge Posts's imposition of a sentence of 125 years, a violation of Hewitt's Eighth Amendment protection against such excessiveness." See Dkt. # 17, Ex. 4 at 22.  Thus, the excessive sentence claim was raised as an instance of ineffective assistance of counsel, and was not fairly presented to the OCCA as a separate claim based on violation of the Eighth Amendment.

*CONCLUSION*

Petitioner received constitutionally ineffective assistance of trial and appellate counsel.  As a result, he is entitled to a new trial.  Accordingly, the petition for writ of habeas corpus shall be conditionally granted.  His remaining claims lack merit and are denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for writ of habeas corpus (Dkt. # 1) is **conditionally granted** on Petitioner's claim of ineffective assistance of appellate counsel for failing to raise a claim of ineffective assistance of trial counsel for refusing to allow him to testify.  Petitioner's remaining claims lack merit and are denied. The writ of habeas corpus shall issue unless the State of Oklahoma commences new trial proceedings within 120 days of the entry of this Opinion and Order.

**DATED** this 6th day of February, 2012.

TERENCE C. KERN
UNITED STATES DISTRICT JUDGE